

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
*Norfolk Division*

IN THE MATTER OF THE ISSUANCE OF
A CRIMINAL COMPLAINT AND ARREST
WARRANT RE:

YAW AYIM

Case No. 2:23-mj-210

## AFFIDAVIT IN SUPPORT OF
## CRIMINAL COMPLAINT

I, Jannelle Maloney, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit demonstrating the probable cause that Yaw Ayim has committed violations of 18 U.S.C. §1343, Wire Fraud.

2. I am a Special Agent with the Department of Homeland Security – Homeland Security Investigations ("HSI") and have been since August 2007. I am an investigator or law enforcement officer of the United States within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a federal agent empowered to conduct investigation and engaged in enforcing the federal criminal statutes. As part of my employment as a Special Agent, I have successfully completed the Criminal Investigator Training Program at the Federal Law Enforcement Training Center and the Immigration and Customs Enforcement Special Agent Training ("ICESAT") in Glynco, Georgia. During my years as a Special Agent, fourteen of which were in the HSI Newark, New Jersey office, I have utilized the execution of warrants, service of subpoenas, obtain records and information to conduct investigations involving contraband smuggling, narcotics trafficking, Counter Proliferation, and fraud against the U.S. Government.

3. The information in this affidavit is based on my personal participation in this investigation, discussion with other law enforcement officers, witness interviews, review of public records, and my training and experience, among other things. Because this affidavit is intended to show merely that there is sufficient probable cause, it does not set forth all of my knowledge about this matter.

### PROGRAM INFORMATION

4. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal law enacted in or around March 2020. It was designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of up to $349

billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program (PPP). In or around April 2020, Congress authorized over $300 billion in additional PPP funding.

5. To obtain a PPP loan, a qualifying business was required to submit a PPP loan application signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications to obtain the PPP loan. In the PPP loan application, the small business (through its authorized representative) must state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures are used to calculate the applicant's PPP loan eligibility. PPP loan applicants must also provide documentation showing their payroll expenses.

6. A participating financial institution (the lender) or an intermediary entity must process a PPP loan application. If a PPP loan application is approved, the participating financial institution funds the PPP loan using its own monies, which are 100% guaranteed by SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, is transmitted by the lender to the SBA while processing the loan.

7. PPP loan proceeds must be used by the business on certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities. The PPP allows the interest and principal on the PPP loan to be entirely forgiven if the business spends the loan proceeds on these expense items within a designated period (usually eight weeks of receiving the proceeds) and uses at least 60% of the PPP loan proceeds on payroll expenses.

8. PPP loan applications submitted prior to August 8, 2020, were processed through a SBA server located in Sterling, Virginia. The SBA transmitted all of the PPP processing fees and loan forgiveness payments through the same Sterling, Virginia based server.

## PROBABLE CAUSE

9. Veteran Communications Group, EIN 83-0833887 was registered in the State of Virginia effective June 8, 2018. Yaw Ayim was the registered agent and sole member of the organization. The business address was 13800 Coppermine Road Ste 1000, Herndon, VA 20171. AYIM is a former U.S. military servicemember and naturalized U.S. citizen of Ghanian descent. AYIM has worked as a contractor to obtain internet service for the U.S. government and other customers. At all times relevant to this affidavit, AYIM resided either in Bowie, Maryland, or Ghana, to the best of your affiant's knowledge and belief.

10. In or about May 2020 and continuing through in or about October 2021, Ayim did knowingly and unlawfully devise and intend to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, and did transmit and cause to be transmitted by means of wire, radio, and television communication, in interstate and foreign commerce, any writings, signs, signals, pictures, and sounds for the execution of such scheme and artifice.

11. Ayim's scheme to defraud involved the use of his company, Veteran Communication Group to apply for and receive PPP loans through the use of materially false and fraudulent loan applications that induced the SBA, through Shore United Bank, to disburse emergency financial assistance to AYIM. In furtherance of this scheme, Ayim transmitted and caused to be transmitted emails, documents, and online PPP applications between his residence in Bowie, Maryland, Ghana, and SBA and other servers located in the Eastern District of Virginia.

12. Shore United Bank is a federally insured financial institution servicing customers in Maryland, Delaware, and Virginia. Ayim's PPP loans were serviced by Shore United through the Elkton, Maryland branch office.

13. On July 3, 2020, Shore United Bank processed SBA loan number 6239858008 in the amount $53,800. The PPP loan was issued to Veteran Communications Group. On May 3, 2021, Shore United Bank processed SBA loan number 2679038908 in the amount $53,833.33. The PPP loan was also issued to Veteran Communications Group.

14. Both loans were fully forgiven in October 2021 and the SBA reimbursed Shore United Bank. The reimbursement was processed through the SBA server in Sterling, Virginia.

**PPP Loan One 6239858008**

15. On May 27, 2020, Ayim sent an email to a Certified Public Accountant (Hereinafter referred to as "CPA-DD") and requested his help to complete a PPP application for Veteran Communications. Ayim officially hired CPA-DD via a consulting agreement on June 14, 2020. CPA-DD prepared several documents in support of the PPP loan applications. However, the documents were prepared retroactively.

16. CPA-DD was a Certified Public Accountant licensed to practice in Maryland. CPA-DD maintained an office and a residence at various times in Ellicott City, Maryland, and Washington DC. CPA-DD was not licensed to practice in Virginia and to the best of your affiant's knowledge, never maintained an office or conducted business in Virginia.

17. On June 19, 2020, Ayim sent CPA-DD another email stating, "Can you please help with the following documents. I shall need them asap for my PPP application prior to the due date." Ayim listed the following in the email :
   a. IRS Form 940 &941 for 2019
   b. Payroll Summary Report for 2019 (or, the last 12 months, depending on which period you choose) (if neither is available, Employee Pay Stubs as of 2/15/20)
   c. 2019 W2s for yourself and any other W3 employees (unfortunately, 1099 workers can't count towards your payroll and have to file their own application).
   d. 2019 P&L – 2019 Business Tax Return will work.
   e. 2019 Balance Sheet- 2019 Business Tax Return will work.

18. On June 26, 2020, Ayim sent CPA-DD an email with the name, Social Security Numbers and addresses of 3 of the 4 individuals that were listed as Veteran Communications employees on the PPP application under the 2019 Payroll Summary, although CPA-DD purportedly completed the 2019 payroll.

19. On June 26, 2020, the CPA-DD emailed the initial PPP loan documents to the Shore United Bank Loan officer. The documents included a PPP loan application, SBA Form 2483, signed by CPA-DD; 2019 Payroll summary; Q-1 to Q-4 Forms 941; Virginia Articles of Incorporation; and a bank statement for Veteran Communications' account. The email was transmitted through the internet protocol address (IP) 108.40.127.92. Who.is shows that this IP address was operated by Verizon Business and located in Ashburn, Virginia.

20. On June 27, 2020, Shore United Bank began processing the loan application. It was processed in the Elkridge, Maryland office. The Shore United Loan Approval Form 408101107 documented that the bank reviewed the 2019 Payroll Summary and the 941 Forms from Veteran Communications. The bank approved their internal form on June 29, 2020.

21. On June 27, 2020, CPA-DD forwarded a request from Shore United bank to Ayim that Ayim sign the PPP application. The attached application still had CPA-DD's signature.

22. On June 28, 2020, CPA-DD sent Ayim another email with a copy of the PPP application, SBA Form 2483, without CPA-DD's signature and asked Ayim to sign the document. Ayim responded with a copy of the PPP application signed by himself. CPA-DD forwarded the signed application to Shore United. The email was transmitted through the Virginia based, IP address 108.40.127.92.

23. The SBA Form 2483, provided on June 28, 2020, for loan 6239858008 had an electronic signature block with Ayim's name which was time coded, "2020.06.28 01:08:28 - 04'00'" Ayim certified on this form to multiple items including:

    a. "The applicant was in operation on February 15, 2020, and had employees for whom it paid salaries and payroll taxes or paid independent contractors."

    b. He certified "no" to "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business? If yes, list all such businesses and describe the relationship on a separate sheet identified as addendum A."

    c. "Yes" to "Is the United States the principal place of residence for all employees of the Applicant included in the Applicant's payroll calculation above?"

  d. "The funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule…"

  e. "I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects…"

24. On June 29, 2020, Shore United certified the SBA Lender Application for the loan. The application was signed by a Shore United Vice President and transmitted to the SBA through the Virginia based server.

25. On June 30, 2020, CPA-DD sent the Shore United loan package to Ayim via email and asked him to sign and return the documents. On June 30, 2020, Ayim returned the package to CPA-DD, signed. These documents were also provided to investigators by Shore United bank, confirming they were used for the loan. The package included:

  a. Company Resolution to borrow for Shore United Loan number 4081081107 with a principal amount of $53,800. Ayim signed as the Sole Member.
  b. Certification of Beneficial Owner(s)
  c. Promissory Note specifically listing SBA loan number 6239858008.
  d. Disbursement Request and Authorization

26. On June 30, 2020, Ayim received a notification from DocuSign stating, "All parties have completed Final PPP Docs-Veteran Communications.pdf." The attachment included the Shore United loan package for loan number 4081081107, which was discussed above.

27. On June 30, 2020, The Shore United Bank Loan Officer sent the CPA a signature card for Veteran's Communications bank account so that the account could be opened and the PPP loan funds could be deposited into the account. CPA-DD forwarded the email to Ayim. Ayim communicated with the loan officer and returned the document signed on July 2, 2020.

28. On July 2, 2020, Yaw sent the Shore United Bank Loan Officer an email that included the completed and signed PPP application. The email contained multiple attachments including:

  A. The Veteran Communications Group Employee Summary Report for January 1, 2019, through December 31, 2019. The document showed four employees with a total gross pay of $338,400. The metadata on the document indicated that it was created on June 26, 2020, by the CPA.
    a. P.B. $60,000
    b. Yaw Ayim $180,000
    c. K.J. $38,400
    d. L.A. $60,000

B. IRS Forms 941 for Q1-Q4 of 2019
   a. Each quarter shows four employees with total quarterly wadges of $84,600 and federal withholdings of $9,886.50.
   b. Each of the four IRS form 941s show they were created on June 26, 2020, by the CPA.
   c. Paycheck Protection Program Borrower Application Form

29. On July 3, 2020, the proceeds of the loan were deposited into the Veteran Communication's Shore United Bank account.

30. On July 24, 2020, Ayim communicated with Shore United bank and requested wire services. Ayim stated in part, "We need ACH services to pay our vendors, i.e. AT&T, Verizon, Comcast, CenturyLink, Cox etc. We also need ACH for payroll services." Ayim executed a wire services agreement and sent it via email to Shore United Bank at the end of the discussion on July 24, 2020. The agreement allowed Ayim to initiate wire transfers via online banking.

31. On July 28, 2020, Ayim logged into the Shore United online banking account from an internet protocol (IP) address located in Ghana and initiated the following wire transfers:
   a. $10,000 to L.A. with a note, "payroll"
   b. $1,600 to K.J. with a note, "payroll"
   c. $10,000 to Yaw Ayim, with a note "owners draw"

32. On July 29, 2020, Ayim logged into the Shore United online banking account from an IP address located in Ghana and initiated a $20,000 wire transfer to Vetel LLC, with a note "payroll loan." Records from the state of Virginia showed that Ayim is the owner of Vetel LLC. A review of the Vetel bank account showed that Ayim and his wife, L.B. are the account signatories. The account activity does not show any loans going to Veteran Communications in past or future periods. It shows that significant amounts of funds are transferred from Veteran Communications accounts into Vetel accounts prior to and after this "payroll loan."

33. On August 5, 2020, Ayim logged into the Shore United online banking account from an IP address assigned to Performive, a known VPN provider, and initiated a $3,600 wire transfer to L.A., with a note, "payroll."

34. On August 10, 2020, Ayim logged into the Shore United online banking account from an IP address assigned to Performive and initiated a $8,000 wire transfer to Yaw Ayim with a note, "Payroll."

35. On November 3, 2020, Ayim logged into the online banking account from an IP address assigned to Performive and initiated a wire transfer to himself with a note, "APG FCU Aberdeen Funding." The balance of the Shore United bank account was negative after this withdraw.

36. On October 1, 2021, Ayim received an email from the SBA PPP Direct Forgiveness Portal stating that the request for 6239858008 was approved by the lender and was submitted to SBA for review.

**False Statements on Loan Application One**

37. Contrary to Ayim's certification on the SBA Form 2483, Paycheck Protection Program Borrower Application form, records obtained from the State of Maryland and the State of Virginia show no records of any payments made by Veteran Communications for employee wages or required withholdings.

38. Ayim falsely certified on the same, SBA Form 2483, that Veteran Communications did not have any common owners or common management with any other business.

39. Between June 2019 and August 2020, Ayim submitted Economic Injury Disaster Loan (EIDL) applications to the SBA for four other businesses claiming that he personally managed and/or owned the four other businesses during the same time period in 2019. State incorporation records and government contracts were also located confirming Ayim's roles in the other companies.

40. On October 22, 2019, a letter signed by CPA-DD was provided to a different lender to help secure a loan for Ayim's home. In that letter CPA-DD stated, "Per your request, I am writing to confirm that you are the owner of Veteran Systems, LLC and Veterans Communications LLC." The letter was in Ayim's email, but CPA-DD was not copied.

41. The PPP loan application was based on the statements that Veteran Communications Group had four employees and paid them wages. The employees that were claimed were Ayim, his wife and two adult daughters. Wage records were obtained for his daughter K.J. The wage records showed that K.J. was employed by Walgreens at that time. There were no wage records indicating employee payments to Ayim, his wife, L.A. or daughter, P.B.

42. A review of the bank statements for Veteran Communications does not show any payroll payments. It did reveal significant payments to two individuals, "RM" and "CA," who were sent an email by Ayim on April 17, 2019, requesting that they send their personal information to CPA-DD so that he can prepare their 1099-MISC.

**PPP Loan Two 2679038908**

43. On March 23, 2021, a Paycheck Protection Program, Second Draw Borrower Application Form was signed on behalf of Yaw Ayim. The electronic signature appeared to be in the name of CPA-DD "For" Yaw Ayim. The application stated that Veteran Communications employed four people and had an average monthly payroll of $21,533.33. The document certified multiple items including:

    a. "The applicant was in operation on February 15, 2020, has not permanently closed, and was either an eligible self-employed individual, independent contract, or sole proprietorship with no employees, or had employees for whom it paid salaries and payroll taxes…"

    b. "The applicant has realized a reduction in gross receipts in excess of 25% relative to the relevant comparison time period." The body of the form showed the 4th quarter 2019 gross receipts were $938,416 and the 4th quarter 2020 gross receipts were $384,324.

    c. "The applicant received a first draw Paycheck Protection Program Loan and, before the Second Draw Paycheck Protection Program Loan is disbursed, will have used the full loan amount (including any increase) of the First Draw Paycheck Protection Program Loan only for eligible expenses."

44. On March 23, 2021, a Shore United Bank Relationship Manager, signed the SBA Lendor Application certification for the PPP loan. The form mirrors the information provided in the Veteran Communications PPP application and shows they relied on the data that was provided. The certification would have been transmitted to SBA.

45. On April 21, 2021, Ayim signed a certification that there was a reduction of at least 25% of gross receipts between the fourth quarter of 2019 and the fourth quarter of 2020 and provided the same figures as appeared in the loan application. He transmitted the document to CPA-DD. On April 21, 2020, the CPA forwarded that signed document to Shore United and copied Ayim.

46. On August 3, 2022, Ayim submitted a Veteran Communications profit and loss statement to a consulting company Vice President, in pursuit of a contract. The Veteran Communications profit and loss statement showed that the gross receipts increased in 2020 over 2019. He claimed $1.2 million in 2019 and $1.8 million in 2020.

47. On April 29, 2021, Ayim electronically signed the Shore United disbursement request for the PPP loan seeking a disbursement of $53,833.33 via lender check. He also signed the Shore United Promissory Note and Electronic Transaction Consent.

48. On May 3, 2021, Shore United issued a cashier's check in the amount of $53,833.33 to Veteran Communications Group to fund the second PPP loan. The check was deposited into the Veteran Communications Group HSBC account ending in *3269.

49. Investigators reviewed the activity in bank account *3269. The check for $53,833.33 was deposited on May 3, 2021. On May 4, 2021, $53,500 was transferred to the HSBC account *3907 in the name of Vetel LLC.

50. Investigators reviewed the activity in the Vetel LLC account *3907 and noted the following transactions between May 4, 2021, and June 28, 2021:

   a. $2,200 was deposited into *3907 from another of Ayim's companies "SC" on May 10, 2021. This account previously received payments for other U.S. Government contracts.
   b. An additional $64,000 was deposited into *3907 from the SC account on June 21, 2021.
   c. Seven transactions, totaling $34,400 were made transferring funds out of *3907 to other bank accounts in Ayim's name, including accounts in Ghana.
   d. $6,000 was transferred to L.A.
   e. $21,500 was transferred to individuals unrelated to Veteran Communications
   f. $165 was charged in bank fees.

51. October 8, 2021, Ayim received a notification from the SBA PPP Direct Forgiveness Portal stating that the lender approved the forgiveness request and submitted it to SBA for further review. On October 25, 2021, he was notified that the forgiveness request was completed and payment to the lender was confirmed. The payment would have been initiated through SBA's server located in Sterling, Virginia.

**Additional False Statements on Loan Two**

52. In addition to the false statements described previously, additional evidence exists indicating that Ayim falsified the financial records of Veteran Communications to make it appear they were eligible for a second draw of the PPP loan. The certifications he made in other documents submitted to SBA do not match the PPP loan application documents.

53. January 5, 2021, Ayim submitted an EIDL application for Veteran Communications Group with the same EIN as the entity awarded the PPP loan and stated they had 5 employees, 2019 Gross Revenues of $1.6 million and a cost of goods sold of $1.1 million.

54. On June 1, 2021, Ayim submitted an EIDL application in the name of Veteran Communication Group with the same EIN as the entity that was given the PPP loan. In that application Ayim stated Veteran Communications Group had 5 employees and 2019 Gross Revenue of $600,000 with a cost of goods sold of $200,000.

**Interviews of YAW AYIM and P.B.**

55. On October 18, 2023, Ayim was interviewed by GSA-OIG agents. During this interview Ayim admitted that P.B. and K.J. were never employees of Veteran Communications Group. He further admitted that the PPP loan funds were not used to pay Veteran Communications payroll expenses. Ayim acknowledged signing the first PPP loan application and directed CPA-DD to sign the second PPP loan application. Ayim provided the false information to CPA-DD to

generate the payroll documentation in support of the PPP loans. Finally, Ayim admitted to logging into the SBA website and submitting the applications to forgive the PPP loans.

56. On October 18, 2023, P.B., Ayim's daughter was also interviewed in Pittsburgh, Pennsylvania. P.B. admitted that she was never an employee of Veteran Communications Group. P.B. was also asked about the $10,000 transfer she received from Ayim, and she stated that it was a college graduation gift and she had no knowledge of any PPP loans.

## CONCLUSION

57. Based on the information outlined in this affidavit, probable cause exists to believe that Yaw Ayim committed the offense of Wire Fraud, in violation of 18 U.S.C. §1343. Accordingly, I request that a complaint and arrest warrant be issued charging Yaw Ayim with such offense.

Respectfully submitted,

_____
Special Agent Jannelle Maloney
Special Agent
Homeland Security Investigations

Sworn and subscribed to before me on
October 19, 2023 in Norfolk, Virginia.

_____
Honorable Robert J. Krask
UNITED STATES MAGISTRATE JUDGE